No. 23-5085

[ORAL ARGUMENT NOT YET SCHEDULED]

**UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT**

_____

MARK MOYAR,

*Plaintiff-Appellant*,

v.

DEPARTMENT OF DEFENSE, *et al.*,

*Defendant-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:22-cv-00478 (Timothy J. Kelly, J.)

_____

**BRIEF FOR PLAINTIFF-APPELLANT**
_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.....i

TABLE OF AUTHORITIES .........................................................................ii

GLOSSARY ..............................................................................................iv

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF ISSUES...........................................................................1

STATEMENT OF THE CASE .......................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................2

SUMMARY OF ARGUMENT ....................................................................6

ARGUMENT ..............................................................................................7

      I.      STANDARD OF REVIEW ........................................................7

      II.     THE DISTRICT COURT ERRED BY DISMISSING THE CASE BASED ON AN ARGUMENT NOT BRIEFED BY THE PARTIES ..........................................................................7

      III.    THE DISTRICT COURT ERRED BY REFUSING TO STRIKE THE JONES DECLARATION ...................................13

CONCLUSION ........................................................................................15

CERTIFICATE OF SERVICE...................................................................17

CERTIFICATE OF COMPLIANCE ..........................................................18

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Appellant Mark Moyar ("Moyar"), by and through undersigned counsel, certifies the following:

### I.    Parties and Amici

The parties to this case are the Appellant Moyar and the Appellees Department of Defense and United States Agency for International Development. There are no *amici curiae* so far.

### II.    Rulings Under Review

Appellant seeks review of the order issued by the District Court (Kelly, J.) on 24 October 2022 and the Judgment issued by the District Court on 28 March 2023.

### III.    Related Cases

This case was not previously before this Circuit or any other court. There are currently no pending related cases.

Date: September 20, 2023

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.

## TABLE OF AUTHORITIES

**Cases:**                                                                      **Pages**

*aaiPharma Inc. v. Thompson*, 296 F.3d 227 (4th Cir. 2002)............................9

*\*Baker v. Dir., U.S. Parole Comm.*, 916 F.2d 725 (D.C. Cir. 1990)...............8

*Berkeley v. Home Ins. Co.*, 68 F.3d 1419 (D.C. Cir. 1995)............................7

*Brandon v. D.C. Bd. of Parole*, 734 F.2d 56 (D.C. Cir. 1984).........................8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................9

*Conservation Force v. Salazar*, 699 F.3d 538 (D.C. Cir. 2012)...............…..7, 14

*De Cintio v. Westchester County Med. Ctr.*, 821 F.2d 111 (2d Cir. 1987).......15

*Hall & Assocs. v. EPA*, 956 F.3d 621 (D.C. Cir. 2020) ...................................7

*Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93 (D.C. Cir. 1995)....15

*Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28 (D.D.C. 2017) ......14

*\*LaRouche v. Dep't of the Treasury*, No. 91-1655, 2000 U.S. Dist. LEXIS
5078 (D.D.C. Mar. 31, 2000) ......................................................…14, 15

*LaRouche v. Dep't of the Treasury*, No. 91-1655, 2000 U.S. Dist. LEXIS
17569 (D.D.C. Nov. 3, 2000) ................................................................14

*\*Moore v. Equitrans, L.P.*, 27 F.4th 211 (4th Cir. 2022) ...................................9

*\*Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986 (9th Cir. 1987).........................8

*Partridge v. Am. Hosp. Mgmt. Co., LLC*, 289 F. Supp. 3d 1 (D.D.C. 2017) ....14

*Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98 (D.D.C. 2017) ...........14

*United States v. Wilson*, 503 U.S. 329 (1992) ..................................................11

ii

*U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731 (4th Cir. 1989) ................................................................................9

**Statutes and Rules:**

5 U.S.C. § 701 ...........................................................................1

28 U.S.C. § 1331.......................................................................1

28 U.S.C. § 1361.......................................................................1

*DOD Directive 5220.6 .........................................................…10, 11

Exec. Order 12,968 ...................................................................1

Exec. Order 13,467 ..................................................................11

*Intelligence Community Policy Guidance No. 704.3 ...................................10

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CIA | Central Intelligence Agency |
| DCSA | Defense Counterintelligence and Security Agency |
| DITMAC | Department of Defense Insider Threat Management and Access Center |
| DOD | Appellee Department of Defense |
| DOHA | Defense Office of Hearings and Appeals |
| DOPSR | Defense Office of Prepublication and Security Review |
| FBI | Federal Bureau of Investigation |
| E.O. 12,968 | Executive Order 12,968 |
| The Executive Order | Executive Order 12,968 |
| FOIA | Freedom of Information Act |
| FOIA/PA | Freedom of Information Act/Privacy Act |
| JA | Joint Appendix |
| Moyar | Appellant Mark Moyar |
| SOCOM | United States Special Operations Command |
| USAID | Appellee United States Agency for International Development |

## JURISDICTIONAL STATEMENT

Appellant Mark Moyar ("Moyar") invoked the District Court's jurisdiction against the Department of Defense ("DOD") and United States Agency for International Development ("USAID") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, Executive Order 12,968, and 28 U.S.C. § 1331. Joint App'x at 7 [hereinafter "JA"].

On 28 March 2023, the Honorable Timothy J. Kelly ("the District Court") issued a Final Order dismissing the case. *Id.* at 129. Moyar noticed an appeal on 21 April 2023. *Id.* at 141.

## STATEMENT OF ISSUES

1.      Whether the District Court erred as a matter of fact and law in declining to strike inadmissible testimony.

2.      Whether the District Court erred as a matter of fact and law in concluding that Moyar did not allege that he was entitled to receive the records he demanded because Appellees did not determine that he did not meet the standards for access to classified information.

## STATEMENT OF THE CASE

Moyar sued Appellees in response to their failure to provide him with the documentation to which he was entitled under Section 5.2 of Executive Order

1

12,968 ("E.O. 12,968" or "the Executive Order"). This appeal addresses the following two decisions:

- Minute Order, 24 October 2022 – This order denied Moyar's motion to strike the Declaration of Torrance Jones, JA at 83-86. *Id.* at 4.

- Order, 28 March 2023 – This order dismissed the case for failure to state a claim. *Id.* at 23.

## **FACTUAL AND PROCEDURAL BACKGROUND**

1.      Moyar was appointed in 2018 to serve as Director of the USAID Office of Civilian-Military Cooperation. *Id.* at 9.

2.      DOD maintained his security clearance during this appointment. *Id.* at 10.

3.      In 2019, United States Special Operations Command ("SOCOM") reported to USAID that Moyar had disclosed "numerous instances of classified information." *Id.* at 20, 25.

4.      SOCOM told USAID that "[t]his fact was established through post-publication review" and that "results have been forwarded to the Department of Defense Insider Threat Management and Access Center [("DITMAC")]-Unauthorized Disclosure Program Management Office." *Id.* at 20.

2

5.      SOCOM then suspended "Moyar's cleared visit access to USSOCOM facilities,"[1] *id.*, and USAID, as a result, suspended Moyar's clearance.[2] *Id.* at 25.

6.      Moyar subsequently resigned from his position, *id.* at 27, without being informed that DOD would take his resignation as a cue to indefinitely delay a final adjudication of his clearance issues. *Id.* at 10.

7.      Through various processes which are not materially relevant to the instant controversy, Moyar was then adjudicated multiple times for a security clearance by the Defense Counterintelligence and Security Agency ("DCSA"). *Id.* at 31-82.

8.      Moyar was granted a clearance as a contractor in July 2020. *Id.* at 10.

9.      In December 2020, Moyar was appointed as a Deputy Assistant Secretary of Defense by former President Trump. *Id.*

10.     DCSA then revoked Moyar's clearance again based on the same allegations of disclosing classified information. *Id.* at 31-51.

11.     In January 2021, DCSA reissued the December revocation letter with minor clerical corrections. *Id.* at 53-76.

---

[1] To clarify, SOCOM did not suspend Moyar's *clearance* at this point, as it lacked the authority to do so.

[2] Upon information and belief, USAID was delegated the authority to suspend Moyar's clearance by DOD, but this is not a material issue.

12. As soon as President Biden was inaugurated, DOD informed Moyar that his political appointment had been terminated, and DCSA informed him that he accordingly had no appeal rights to challenge the revocation of his clearance. *Id.* at 11.

13. Moyar was then sponsored for another clearance as a contractor, which was once again denied based on the same allegations in December 2021. *Id.* at 78-82.

14. Throughout the entire process, Moyar has filed numerous Freedom of Information Act ("FOIA") and Privacy Act (collectively "FOIA/PA") requests to USAID, SOCOM, the Defense Office of Prepublication and Security Review ("DOPSR"),[3] and DITMAC, and he has, as of this writing, still not received any information specifying exactly what parts of his book are alleged to be classified or, in fact, any details about the post-publication review that DOPSR allegedly performed. *Id.* at 13.

15. The information has not been withheld from these requests pursuant to FOIA/PA exemptions; the offices simply do not process his requests.[4] *Id.*

---

[3] Upon information and belief, DOPSR is the office which would have performed the alleged "post-publication review" mentioned in SOCOM's letter to USAID.

[4] A review of Appellees' exhibits in this case reveals a pattern of various FOIA offices referring documents back and forth to each other, but rarely releasing any useful information. Virtually all of the records released in response to Moyar's FOIA/PA requests have either been records of previous investigations, records he

16.    In June 2022, Appellees filed a motion to dismiss the case, claiming

that the Court lacked subject-matter jurisdiction and that Moyar had failed to state

a claim.

17.    In support of their motion, Appellees filed several exhibits, including

a declaration authored by Torrance Jones, Branch Chief of DCSA Consolidated

Adjudication Services.[5] JA at 83-86.

18.    In August 2022, Moyar moved to strike the Jones Declaration on the

grounds that the declaration was inadmissible in the context of a motion to dismiss

---

submitted, or similarly tangential information, and, to the extent that any of the
still-unreleased records pertain to the actual post-publication review or allegedly
classified information, they clearly fall within the scope of records still "under
referral." Notably, in the case below Defendants spent five pages discussing the
web of overlapping referrals between USAID and DCSA without once mentioning
the FOIA/PA requests—*or* the E.O. 12,968 requests—Moyar filed for SOCOM,
DOPSR, or DITMAC records, which have yet to be meaningfully answered.
*Compare* Defs.' Mem. P. & A. Supp. Defs.' Mot. Dismiss & Mot. Relief from
LCvR 7(n), Dkt. #7-1, at 5-10 (filed June 23, 2022), *Moyar v. DOD*, No. 22-478
(D.D.C.), *with* JA at 120 (copy of Defendants' Ex. 1 redacted by SOCOM), 121
(SOCOM letter refusing to respond to E.O. 12,968 request, which it labels a
FOIA/PA request), 122-23 (most recent DOD FOIA/PA response regarding
DOPSR records), 124 (DOPSR letter refusing to response to E.O. 12,968 request,
citing FOIA/PA request and this case), 125-27 (DCSA FOIA/PA responses
claiming no records from DITMAC created after 1 February 2018).

[5] The declaration and several of Appellees' filings inexplicably refer to this office
as "DOD Consolidated Adjudication Facility" even though the office's name was
officially changed before the declaration and filings were written. *Renaming of the
DOD CAF* (June 17, 2022), *at*
https://www.dcsa.mil/about/news/Article/3067652/renaming-of-the-dod-caf/ (last
accessed Sept. 19, 2023). Moyar identified this discrepancy for the District Court,
which declined to address the matter.

for failure to state a claim and that, in any case, declarant did not have personal knowledge of the matters about which he was testifying.

19.     After Moyar's motion to strike was fully briefed, the District Court denied it, stating that Federal Rule of Civil Procedure 12(f) did not apply to declarations filed in support of motions. JA at 4.

20.     On 28 March 2023, the District Court issued a final decision. After holding that it had subject-matter jurisdiction, *id.* at 135, the District Court dismissed the case on the grounds that Moyar had failed to state a claim because "he ha[d] not plausibly alleged that [Appellees] violated Section 5.2(a)(2) because they did not 'determine[]' that he did 'not meet the standards for access to classified information.'" *Id.* at 135. This was an argument that Appellees did not make and the parties did not brief.

21.     On 21 April 2023, Moyar appealed the District Court's orders. *Id.* at 141.

## SUMMARY OF ARGUMENT

The District Court erred when it declined to strike the Jones Declaration, and it erred when it held that DOD had not triggered Moyar's right to receive the investigative material relied upon by DCSA. As far as USAID was concerned, the District Court erred by focusing on USAID's decision to suspend Moyar's

clearance in June 2019 instead of USAID's refusal to provide information relied upon by DCSA to revoke his clearance in December 2021.

## ARGUMENT

Moyar seeks a reversal of the District Court's orders of 24 October 2022 and 28 March 2023.

## I.    STANDARD OF REVIEW

The Court reviews questions of law *de novo*. *Berkeley v. Home Ins. Co.*, 68 F.3d 1419, 1415 (D.C. Cir. 1995). While the Court typically reviews a district court's ruling on a motion to strike for abuse of discretion, *Hall & Assocs. v. EPA*, 956 F.3d 621, 629 (D.C. Cir. 2020), "a district court abuses its discretion if it did not apply the correct legal standard . . . or if it misapprehended the underlying substantive law." *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012) (quotations omitted). "In such instances the court must examine *de novo* whether the district court applied the correct legal standard." *Id.* (quotations omitted).

## II.    THE DISTRICT COURT ERRED BY DISMISSING THE CASE BASED ON AN ARGUMENT NOT BRIEFED BY THE PARTIES

The Court can and should reverse and remand this case to the District Court for the simple reason that the basis of the District Court's decision was a legal argument which was not raised by Appellees and was not briefed by either party. Simply put, while Appellees argued that Moyar did not identify a final agency

action to challenge under the APA, they did *not* argue that he had not adequately alleged that DCSA had "determined that he did not meet the standards for access to classified information." JA at 135 (cleaned up). They similarly did not argue that due to this lack of showing, he had not adequately alleged that he was entitled to receive the requested information pursuant to Section 5.2(a) of the Executive Order. *Id.* at 138. The District Court reached this conclusion after performing its own analysis comparing the language used in the Executive Order to the language used in DOD's revocation letters, without ever putting either side on notice that it was considering this angle.

A district court in this Circuit may only dismiss a case for failure to state a claim without giving notice to the plaintiff if it is "patently obvious" that the plaintiff could not have prevailed on the facts alleged in his complaint. *Baker v. Dir., U.S. Parole Comm.*, 916 F.2d 725, 727 (D.C. Cir. 1990). "Patently obvious" is a high bar, equivalent to "where the claimant cannot possibly win relief." *Id.* (quoting *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987)). This strict standard is grounded in this Court's strong belief in the value of the "sharply honed adversarial exchange" involved in a Rule 12(b)(6) motion. *Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984).

This duty to provide notice is perhaps best understood as analogous to the duty of a district court to give notice to the non-moving party that it is considering

8

granting summary judgment *sua sponte. See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). In the words of the Fourth Circuit, this notice "'must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration' [so as to] ensure a litigant has a 'full and fair opportunity to present its case.'" *Moore v. Equitrans, L.P.*, 27 F.4th 211, 224 (4th Cir. 2022) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989), and *aaiPharma Inc. v. Thompson*, 296 F.3d 227, 235 (4th Cir. 2002)). Most importantly, "a district court may not short-circuit the notice and hearing process on the basis that the claim at issue lacks merit." *Moore*, 27 F.4th at 224.

This approach is wholly applicable to this case, since the question the District Court sought to answer—what is a "determination" in the context of Section 5.2(a) of the Executive Order—is as much a factual question as a legal one. For example, had the District Court put Moyar on notice that it was considering dismissing the case on this basis, Moyar could have offered evidence that the District Court's interpretation was not endorsed by the agencies with expertise in security clearance adjudications and appeals, either in the abstract or as applied to specific cases.

For example, while the District Court focused on the fact that DCSA called its December 2021 denial a "preliminary decision" which would "be submitted to

an Administrative Judge for a determination as to whether or not to grant, deny, or revoke [his] security clearance," JA at 138, DCSA's choice of words in describing its process does not represent the actual process as understood by the agency, or in fact most agencies. Moyar could have introduced evidence that the hearing conducted by the Administrative Judge is what is commonly understood to be an "appeal," and that the second-level appeal to the Defense Office of Hearings and Appeals ("DOHA") Appeal Board, which DCSA and the District Judge call "the appeal," is a review only for harmful error in which "[n]o new evidence shall be received or considered by the Appeal Board." DOD Directive 5220.6, Encl. 3 ¶¶ E3.1.29, E3.1.32 (Jan. 2, 1992). Moyar could have introduced evidence that this interpretation is standard across the Intelligence Community, citing to rules and examples from other agencies. *See*, *e.g.*, Intelligence Community Policy Guidance No. 704.3: Denial or Revocation of Access to Sensitive Compartmented Information, other Controlled Access Program Information, and Appeals Processes ¶¶ D(1)(c)-(f) (providing that "[a]ny documents, records and reports upon which a denial or revocation is based" must be provided *before* applicant is given "[a]n opportunity to respond, in writing," "[a]n opportunity to appeal to the Head of their IC Element," or "[a]n opportunity to appear personally before an adjudicative or other authority, other than the investigating entity, as determined by the Head of an IC Element, to present relevant documents, materials, and information").

For that matter, Moyar could have argued that the Office of the Director of National Intelligence, which promulgated this guidance, is entitled to *Chevron* deference in its interpretation of the Executive Order as the Security Executive Agent established by Executive Order 13,467 to be "responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position." Exec. Order. 13,467 § 2.3(c)(ii). Instead of making an informed decision after receiving all of this evidence, as well as likely being informed by the Government that it did not support the interpretation the District Court ended up adopting, the District Court instead performed its own textual analysis of the words used in DCSA's *correspondence* to conclude that, contrary to any reasonable interpretation, an applicant who was issued a Statement of Reasons and expected to respond to it was not entitled to receive the information he would need to respond to it until after he had already responded and could no longer provide any evidence in his defense. *See* DOD Directive 5220.6, Encl. 3 ¶¶ E3.1.32 (DOHA Appeal Board cannot receive new evidence). This is an absurd result, and the Supreme Court's warning that "statutory interpretations which would produce absurd results are to be avoided," *United States v. Wilson*, 503 U.S. 329, 334 (1992), applies just as strongly to Executive Order interpretations.

11

Accordingly, this Court should reverse this case and remand it to the District Court to, at the very least, receive argument on the issue of whether a Statement of Reasons constitutes a "determination" that an applicant does not meet the standards for access to classified information for purposes of triggering the right to receive information under Section 5.2(a) of the Executive Order.

As far as USAID is concerned, the District Court's error on that count is significantly easier to explain, as it simply misunderstood the nature of the allegations. The District Court found—correctly—that USAID never made a final agency decision to grant or deny him a clearance which would be considered independently sufficient to trigger his rights under Section 5.2(a) of the Executive Order. JA at 137. Moyar never argued that it had. Instead, Moyar argued that when *DCSA* made a final agency decision to deny him a clearance—however it characterized the decision—and relied on information being held by USAID, *that* triggered USAID's duty to respond under the Executive Order. The Executive Order applies to the entire Executive Branch, and there is no caveat in Section 5.2 that the applicant is only entitled to investigative records *held by the deciding agency* or that the deciding agency can refer any records created by another agency to that agency and therefore remove them from the reach of the Executive Order.

The District Court's contrary position would create an exception to the Executive Order which would effectively swallow the duty. If, for example, the

Central Intelligence Agency ("CIA") makes an undisputed final decision to revoke an applicant's clearance, and it bases that decision on information provided to it by the Federal Bureau of Investigation ("FBI"), it could simply "refer" all FBI-originated records subject to the applicant's Section 5.2(a) request to the FBI and not turn them over, and the FBI could then claim that since *it* did not make the clearance decision, it did not have to release the records either and could put them in its first-in, first-out FOIA queue to be processed several years later. Even in cases where nobody would dispute that there was a final agency action by CIA, the FBI could never be required, under the District Court's interpretation, to provide the requested information, because *it* did not make a final agency decision. This too is an absurd result, and an affirmation by this Court of the District Court's decision will give agencies free rein to effectively dodge any responsibilities under Section 5.2(a) where more than one agency created the information relied upon by the deciding agency.

## III.    THE DISTRICT COURT ERRED BY REFUSING TO STRIKE THE JONES DECLARATION

The District Court based its entire decision not to strike the Jones Declaration on the assertion that "declarations filed in support of motions . . . cannot be stricken under Rule 12(f)." JA at 4. Therefore, the Court should reverse and remand this decision to the District Court without even considering the merits of the motion to strike—which are valid—for the simple reason that the District

13

Court "did not apply the correct legal standard . . . or . . . misapprehended the underlying substantive law." *Conservation Force*, 699 F.3d at 542, which constitutes a *per se* abuse of discretion.

Simply put, the District Court's interpretation of this issue is not shared by most of the courts in this Circuit and should not be adopted by this Court. The majority of courts in this Circuit to face this issue have entertained motions to strike exhibits to motions despite the fact that such filings are not pleadings under Rule 7(a). *See*, *e.g.*, *LaRouche v. Dep't of the Treasury*, No. 91-1655, 2000 U.S. Dist. LEXIS 5078, at *13 (D.D.C. Mar. 31, 2000) (explaining the propriety of considering a motion to strike a declaration attached to a cross-motion for summary judgment), *amended in part* 2000 U.S. Dist. LEXIS 17569 (D.D.C. Nov. 3, 2000); *see also Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 38 (D.D.C. 2017) (considering motion to strike a declaration submitted with a reply brief in support of a motion for summary judgment); *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017) (considering motion to strike documents attached to a motion to dismiss); *Partridge v. Am. Hosp. Mgmt. Co., LLC*, 289 F. Supp. 3d 1, 11 (D.D.C. 2017) (considering motion to strike an errata).

As Judge Lamberth noted in *LaRouche*, a motion to strike may be "the only method of attack against a defective affidavit," and considering a motion to strike an affidavit also provides a means to implement courts' obligation under the

evidentiary rules not to consider material that is hearsay, irrelevant, or otherwise inadmissible. 2000 U.S. Dist. LEXIS 5078 at *13-14. Contrary to the minority view adopted by the District Court, this interpretation flows directly from this Court's precedent, in which objections to affidavits are deemed to be waived if a motion to strike was not filed. *See Humane Soc'y of the United States v. Babbitt*, 46 F.3d 93, 97 n.5 (D.C. Cir. 1995) (citing *De Cintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987) as holding that six circuits are in "unanimous accord" as to the waiver of defects absent a motion to strike). If there exists no mechanism to strike a declaration, but objections to a declaration are considered waived by this Court absent a motion to strike, then there exists no way to preserve an objection to a declaration. The District Court's interpretation accordingly cannot be reconciled with this controlling precedent.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse and remand the District Court's orders.

Date: September 20, 2023

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of September, 2023, I filed the

foregoing with the Court's Electronic Case Filing system, causing a copy to be

served via electronic mail to Appellees' counsel of record.

Date: September 20, 2023

Respectfully submitted,


 /s/ Kelly B. McClanahan 
Kelly B. McClanahan, Esq.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing filing contains 3,626 words and was

prepared in 14-point Times New Roman font using Microsoft Word 2016.


 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.