**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 23-5085**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MARK MOYAR,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF DEFENSE and
UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

JOSHUA M. SALZMAN
URJA MITTAL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7248*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-4895*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

The plaintiff-appellant is Mark Moyar.

The defendants-appellees are the United States Department of Defense and the United States Agency for International Development.

### B.    Rulings Under Review

The plaintiff-appellant is appealing from the October 24, 2022 order and the March 28, 2023 judgment and opinion issued by the Honorable Timothy J. Kelly, United States District Court for the District of Columbia, in Case No. 22-cv-478, Dkt. Nos. 23 and 24.  No citation to either order is currently available in the Federal Supplement.  The district court's October 24, 2022 order is not available on Westlaw or Lexis.  The district court's March 28, 2023 opinion is available at 2023 WL 2662915.

### C.    Related Cases

The government is not aware of any related cases within the meaning of D.C. Circuit Rule 28.

*s/ Urja Mittal*
Urja Mittal

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE CASE ......................................................................3

    A.    Executive Order 12,968........................................................3

    B.    Factual Background .............................................................6

    C.    Prior Proceedings ...............................................................12

STANDARD OF REVIEW............................................................................16

SUMMARY OF ARGUMENT .....................................................................16

ARGUMENT .................................................................................................18

I.    The Executive Order Bars Judicial Review...................................18

II.    Even If Executive Order 12,968 Were Judicially Enforceable, Plaintiff Has Failed To State A Claim...........................................22

III.    The District Court Did Not Abuse Its Discretion In Denying Plaintiff's Motion To Strike..........................................................29

CONCLUSION ..............................................................................................33

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Page(s)**

*Air Transport Ass'n of Am. v. Federal Aviation Admin,*
    169 F.3d 1 (D.C. Cir. 1999) ...................................................................... 19

*California v. Environmental Prot. Agency,*
    72 F.4th 308 (D.C. Cir. 2023) ............................................................... 20

*Confederate Mem'l Ass'n v. Hines,*
    995 F.2d 295 (D.C. Cir. 1993) ............................................................... 21

*Department of Navy v. Egan,*
    484 U.S. 518 (1988) ............................................................................... 26

*Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997) ............................................................... 30

*Hall & Assocs. v. Environmental Prot. Agency,*
    956 F.3d 621 (D.C. Cir. 2020) ........................................................ 16, 29

*Helicopter Ass'n Int'l, Inc. v. Federal Aviation Admin,*
    722 F.3d 430 (D.C. Cir. 2013) ............................................................... 19

*Jerome Stevens Pharm., Inc. v. Federal Drug Admin.,*
    402 F.3d 1249 (D.C. Cir. 2005) ............................................................. 30

*King v. Jackson,*
    487 F.3d 970 (D.C. Cir. 2007) ............................................................... 16

*Meyer v. Bush,*
    981 F.2d 1288 (D.C. Cir. 1993) ............................................................. 19

*Michigan v. Thomas,*
    805 F.2d 176 (6th Cir. 1986) ................................................................ 20

*Morongo Band of Mission Indians v. Federal Aviation Admin.*,
 161 F.3d 569 (9th Cir. 1998) ...............................................................21

*National Mining Ass'n v. United Steel Workers*,
 985 F.3d 1309 (11th Cir. 2021) ..........................................................20

*Romero v. Department of Def.*,
 527 F.3d 1324 (Fed. Cir. 2008) ..........................................................20

*Smith v. Casellas*,
 119 F.3d 33 (D.C. Cir. 1997) ...............................................................21

*Sur Contra La Contaminacion v. Environmental Prot. Agency*,
 202 F.3d 443 (1st Cir. 2000) ..........................................................20–21

**Statutes:**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

**Rules:**

Fed. R. App. P. 4(a)(1)(B) .......................................................................1

Fed. R. Civ. P. 12(b)(1) ...........................................................................30

Fed. R. Civ. P. 12(b)(6) ...................................................................18, 30

Fed. R. Civ. P. 12(f) ...........................................................................15, 18, 31

**Other Authorities:**

DCSA, *Renaming of the DOD CAF* (June 17, 2022),
 https://perma.cc/374D-P5ES ...............................................................8

Exec. Order No. 12,968, 60 Fed. Reg. 40,245 (Aug. 7, 1995)
.............................................................2, 3, 4, 5, 14, 18, 19, 22, 23, 28

11 James Wm. Moore et al., *Moore's Federal Practice* § 56.30[4]
(3d ed. 1998) ......................................................................... 31

5C Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1366 (3d ed. 2004) ................... 31, 32

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| DCSA | Defense Counterintelligence and Security Agency |
| USAID | United States Agency for International Development |

## STATEMENT OF JURISDICTION

Plaintiff Mark Moyar invoked the district court's jurisdiction under 28 U.S.C. § 1331.  JA 7.  The district court entered judgment for defendants on March 28, 2023.  JA 129.  Moyar filed a timely notice of appeal on April 21, 2023.  JA 141; Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff Mark Moyar requested and held security clearances in connection with positions he occupied in the government and with private contractors.  On multiple occasions, government agencies began investigations into whether Moyar's eligibility for a clearance should be revoked or denied on indications that Moyar had improperly handled classified information.  Because Moyar repeatedly transferred positions between agencies and in and out of government service, none of these investigations was completed, and none culminated in a final determination to revoke or deny Moyar a security clearance.

Moyar filed suit alleging that he was improperly denied access to documents related to these preliminary investigations.  The only authority Moyar invokes as a basis for his alleged entitlement to these

documents is Executive Order 12,968, which establishes a framework for access to classified information for federal personnel.  Exec. Order No. 12,968, 60 Fed. Reg. 40,245 (Aug. 7, 1995).  The executive order states that it "is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person."  *Id.* § 7.2(e), 60 Fed. Reg. at 40,254. The provision of the executive order on which Moyar relies provides that only individuals "who are determined to not meet the standards for access to classified information" shall be provided information "upon which a denial or revocation" of access to classified information is based. *Id.* § 5.2(a)(2), 60 Fed. Reg. at 40,252.

The issues presented are:

1.  Whether Moyar has judicially enforceable rights under Executive Order 12,968.

2.  Assuming Moyar has such rights, whether defendants acted contrary to law in not providing Moyar with the documents he requested when defendants' investigations reached only preliminary

conclusions and Moyar has never been finally "determined to not meet the standards for access to classified information."

3.  Whether the district court abused its discretion in denying Moyar's motion to strike a declaration on which the district court did not rely in granting defendants' motion to dismiss.

## STATEMENT OF THE CASE

### A.    Executive Order 12,968

Executive Order 12,968 establishes a framework for access to classified information by federal personnel.  Exec. Order No. 12,968, 60 Fed. Reg. 40,245.  The executive order reflects the principle that the "national interest requires that certain information be maintained in confidence through a system of classification in order to protect our citizens, our democratic institutions, and our participation within the community of nations," and that the "unauthorized disclosure of information classified in the national interest can cause irreparable damage to the national security and loss of human life."  *Id.* at 40,245.

Section 3.1 of the executive order sets parameters for whether an individual is eligible to access classified information.  Exec. Order No. 12,968, § 3.1, 60 Fed. Reg. at 40,249–50.  A "determination of eligibility"

for access to classified information is a "decision based on judgments by

… adjudicative personnel." *Id.* § 3.1(b), 60 Fed. Reg. at 40,250.

"[E]ligibility for access to classified information shall be granted only to

employees … for whom an appropriate investigation has been

completed and whose personal and professional history affirmatively

indicates loyalty to the United States, strength of character,

trustworthiness, honesty, reliability, discretion, and sound judgment, as

well as freedom from conflicting allegiances and potential for coercion,

and willingness and ability to abide by regulations governing the use,

handling, and protection of classified information." *Id.*

Section 5.2(a)(2) of the executive order provides that "[a]pplicants

and employees who are determined to not meet the standards for access

to classified information established in section 3.1 of this order shall

be[] … provided within 30 days, upon request and to the extent the

documents would be provided if requested under the Freedom of

Information Act (5 U.S.C. 552) or the Privacy Act ([5] U.S.C. 552a), as

applicable, any documents, records, and reports upon which a denial or

revocation is based." Exec. Order No. 12,968, § 5.2(a)(2), 60 Fed. Reg. at

40,252. Once an individual's eligibility is "determined," the individual

must be given a detailed explanation of the basis for that conclusion, informed of the right to be represented by counsel at the individual's expense, given an opportunity to appeal the determination to a high-level panel appointed by the agency head, and provided an opportunity to appear before and present relevant information to an authority other than the investigating entity. *Id.* § 5.2(a)(1)–(7), 60 Fed. Reg. at 40,252.

The executive order expressly states that it does not create judicially enforceable rights. Section 5.2(c) of the executive order directs federal agencies to "promulgate regulations to implement" section 5.2 and clarifies that "[t]his section ... creates no procedural or substantive rights." Exec. Order No. 12,968, § 5.2(c), 60 Fed. Reg. at 40,252. Section 7.2(e) of the executive order then reiterates that the executive order is "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." *Id.* § 7.2(e), 60 Fed. Reg. at 40,254.

### B.    Factual Background

1.  In 2016, plaintiff Mark Moyar submitted a book manuscript for prepublication review to the Department of Defense Office of Prepublication and Security Review.  JA 9, 34, 130.  In 2017, before prepublication review was complete, Moyar published his book.  JA 9, 34, 130.

In 2018, Moyar joined the United States Agency for International Development (USAID) as a senior advisor.  JA 9, 130.  In connection with this position, Moyar held a security clearance.  JA 9, 10, 130.  In May 2019, following post-publication review, the Department of Defense Special Operations Command informed USAID that post-publication review had revealed that Moyar's book "contains numerous instances of classified information" and that Moyar's "cleared visit access" to Special Operations Command facilities had been "suspended."  JA 20; *see also* JA 10, 130–31.  Special Operations Command shared the results of its post-publication review with the Department of Defense Insider Threat Management and Access Center as well.  JA 9.

Shortly thereafter, USAID suspended Moyar's access to classified information based on the information concerning Moyar's unauthorized

disclosure of classified information.  JA 10, 25, 131.  USAID informed

Moyar that it would "initiate a background investigation to resolve the

issue of concern," and that the "information developed during the course

of the investigation [would] be adjudicated … to determine the

pertinent facts … and to assess [Moyar's] continued eligibility to hold a

security clearance."  JA 25.  According to the letter, Moyar's access to

classified information would "remain suspended until the precipitating

issues can be resolved sufficiently to permit resolution of [Moyar's]

clearance eligibility."  JA 25.  Moyar resigned from USAID the following

month, and as a result, USAID "never made a final decision regarding

denial or revocation" of his security clearance.  JA 29; *see also* JA 10,

12–13, 131.

In July 2020, Moyar obtained a security clearance from the

Department of Defense through a private-contractor sponsorship.  JA

10, 131.  In December 2020, Moyar was nominated to be a deputy

assistant secretary of defense.  JA 10, 131.  That month, the Defense

Counterintelligence and Security Agency (DCSA),[1] which is part of the

---

[1] Eligibility for access to classified information for the Department
of Defense was previously overseen by the Department of Defense

*Continued on next page.*

Department of Defense, notified Moyar of its "preliminary decision" to revoke his clearance given the information concerning his publication of classified information and USAID's decision to suspend his access to USAID facilities.  JA 31, 34–36; *see also* JA 11, 131.  The notification letter explained that "[i]f this preliminary decision becomes final, [Moyar] will not be eligible for access to" classified information.  JA 31. The notification letter included a Statement of Reasons in support of the preliminary decision, which explained that Moyar's "knowing[] and willful[]" disclosure of information in his book "reflects questionable judgment and unwillingness to comply with rules and regulations, which raises questions about [his] reliability, trustworthiness, and ability to protect classified or sensitive information."  JA 35.  The Statement of Reasons explained that additional security concerns stemmed from Moyar's revelation that he had "turned over [his] personal computer containing defense information in the form of a book

Consolidated Adjudications Facility, which was transferred to DCSA in 2019 and renamed DCSA Consolidated Adjudication Services in 2022. *See* DCSA, *Renaming of the DOD CAF* (June 17, 2022), https://perma.cc/374D-P5ES.  For ease of discussion and because any differences between these entities are not relevant for purposes of this appeal, this brief refers to all actions and correspondence by any of these entities as actions and correspondence by DCSA.

manuscript to [his] son for 'scrubbing' of sensitive information along with data on another personal computer possibly containing related manuscript files" and that Moyar "may have or made a copy of the original draft and possibly some related files on [his] current personal computer." JA 35–36.

The notification letter further explained that Moyar had the opportunity to respond to DCSA's preliminary assessment and Statement of Reasons and to request records from DCSA and USAID for the records that DCSA relied on in its preliminary assessment. JA 31–32, 38–44. The notification letter included forms for requesting those records from DCSA and USAID. JA 11, 40–44; *see also* JA 11 (explaining that the December 2020 notification letter was "reissued" in January 2021 with "minor clerical corrections"); JA 52–76 (January 2021 notification letter).

In January 2021, Moyar's nomination for a political position ended with the change in presidential administration. JA 11, 131. DCSA informed Moyar that because his nomination had ended, DCSA would cease its review of his security clearance for that role. JA 11.

In February 2021, a private contractor requested another security clearance for Moyar from the Department of Defense.  JA 11.  In December 2021, DCSA notified Moyar of its "preliminary determination" that Moyar should not be granted a security clearance for largely the same reasons that DCSA had given in support of its previous preliminary decision.  JA 79, 81–82; *see also* JA 11–12, 131. The notification letter contained a Statement of Reasons in support of the preliminary decision, and Moyar was given the opportunity to respond.  JA 79–82.  The notification letter also offered Moyar the option of requesting a hearing before an Administrative Judge and requesting a copy of DCSA's investigation report.  JA 79–80; *see also* JA 11.  The letter made clear that it contained only a preliminary assessment of whether Moyar would be granted a clearance and that it was not a final decision.  JA 80.  Moyar was granted several extensions of time to respond to the Statement of Reasons, and at the time the complaint in this case was filed and the motion to dismiss was briefed

in district court, DCSA had not yet made a final determination on Moyar's clearance.[2]  Dkt. No. 7-1 at 5.

2.  Moyar repeatedly sought information related to these events. First, Moyar asked DCSA and USAID for documents pursuant to section 5.2(a)(2) of Executive Order 12,968.  Specifically, he requested the documents relied upon in the agencies' preliminary assessments of his eligibility to access classified information.  JA 12, 132.  DCSA provided the documents that it had created but not documents created by USAID or other Department of Defense components.  JA 12, 132; *see also* JA 104–10.  USAID declined to provide documents, explaining that because Moyar resigned from USAID "before a final determination was made regarding his access to classified information," USAID "never made a final decision regarding denial or revocation," so "the provisions of section 5.2" of Executive Order 12,968 "do not apply."  JA 12–13 (quotation marks omitted); *see also* JA 29, 132.

---

[2] DCSA has since halted the processing and adjudication of Moyar's renewed clearance request, after learning that Moyar is no longer employed by the private contractor that sponsored the clearance request.

Second, Moyar asked DCSA for forms to request documents from other Department of Defense components—Special Operations Command, the Defense Office of Prepublication and Security Review, and the Department of Defense Insider Threat Management and Analysis Center.  JA 12, 132.  DCSA declined because it had not relied on records from those agencies in its preliminary assessment.  JA 12, 132; *see also* JA 128.

Third, Moyar submitted document requests under the Freedom of Information Act and the Privacy Act to USAID, DCSA, Special Operations Command, the Defense Office of Prepublication and Security Review, and the Defense Insider Threat Management and Analysis Center and received responses.  JA 13, 132; *see also* JA 87–102, 111–19, 121, 126–27.

## C.    Prior Proceedings

1.  Moyar filed suit in district court alleging that DCSA and USAID violated the Administrative Procedure Act (APA) by not providing all of the documents and paperwork that Moyar seeks pursuant to Executive Order 12,968.  JA 7–18.  Moyar alleges that DCSA relied on "information compiled and provided to it by USAID" in

adjudicating Moyar's eligibility for a clearance, but that DCSA and USAID failed to provide such information in response to Moyar's requests for information under section 5.2(a)(2) of Executive Order 12,968.  JA 13–14, 15.  Moyar seeks a court order, in the form of either a declaratory judgment or writ of mandamus, directing DCSA and USAID to provide Moyar with the information he seeks.  JA 14, 15.

Relatedly, Moyar alleges that DCSA relied on "information compiled and provided by USAID based on information maintained by" Special Operations Command, the Defense Office of Prepublication and Security Review, and the Defense Insider Threat Management and Analysis Center, but that DCSA failed to provide that information and declined to issue "documentation request paperwork for Moyar to submit to those offices" under section 5.2(a)(2) of the executive order. JA 16.  Moyar seeks a court order, in the form of either a declaratory judgment or writ of mandamus, directing DCSA to provide Moyar with the documentation-request paperwork.  JA 17.

Moyar's suit does not challenge USAID's administrative suspension of his access to classified information or DCSA's preliminary assessments that his clearances should be revoked or denied.  Nor does

Moyar challenge the responses to his Freedom of Information Act or Privacy Act requests.  JA 132 n.2; *see also* JA 13–17.

2.  The district court dismissed all of Moyar's claims.  The district court began its dismissal ruling by observing that "there are good reasons to think" that Moyar could not prevail on his claims because the executive order "states that it does not 'create any right to administrative or judicial review'" and is "'intended only to improve the internal management of the executive branch.'"  JA 135 n.4 (quoting Exec. Order No. 12,968, § 7.2(e), 60 Fed. Reg. at 40,254).

The district court then held that even assuming the executive order were judicially enforceable under the APA, Moyar has failed to state a claim under the plain language of the executive order.  As the district court explained, neither USAID nor DCSA ever "determined" that Moyar did "not meet the standards for access to classified information," so neither agency was required to provide documentation "upon which a denial or revocation is based."   JA 136 (quoting Exec. Order. No. 12,968, § 5.2(a)(2), 60 Fed. Reg. at 40, 252).  Moyar resigned from USAID before USAID decided whether to revoke his clearance, and DCSA made only "preliminary" assessments of Moyar's eligibility to

access classified information in both instances described in Moyar's complaint.  JA 137–38.

The district court held that Moyar has failed to allege he was entitled to documentation-request paperwork under Executive Order 12,968 for similar reasons.  JA 138.  And because Moyar has not plausibly alleged a violation of the executive order, the district court concluded that he has not alleged entitlement to relief under the Mandamus Act, Declaratory Judgment Act, or All Writs Act.  JA 139. The district court dismissed all of Moyar's claims with prejudice "because new factual allegations cannot cure the deficiencies in his complaint."  *Id.*

3.  In district court, the government included a declaration from DCSA official Torrance Jones in connection with its motion to dismiss. The declaration briefly explained DCSA's practices for responding to information requests under Executive Order No. 12,968.  JA 83–86. The district court denied Moyar's motion to strike the declaration on the ground that a court may only strike a pleading and not an affidavit under Federal Rule of Civil Procedure 12(f).  JA 4.

15

## STANDARD OF REVIEW

This Court reviews de novo the district court's grant of a motion to dismiss. *See King v. Jackson*, 487 F.3d 970, 972 (D.C. Cir. 2007). This Court reviews a district court's ruling on a motion to strike for abuse of discretion. *See Hall & Assocs. v. Environmental Prot. Agency*, 956 F.3d 621, 629 (D.C. Cir. 2020).

## SUMMARY OF ARGUMENT

1. Moyar claims DCSA and USAID impermissibly denied him documents and documentation-request paperwork pertaining to the review of his security clearance eligibility under section 5.2 of Executive Order 12,968. Executive Order 12,968 expressly provides that it does not create any judicially enforceable rights, however, and that it is intended only to improve the internal management of the executive branch. This Court has repeatedly held that an executive order containing language like this—indeed, language identical to the language in Executive Order 12,968—does not create any private rights and is not subject to judicial review, and the Federal Circuit has affirmed this point in the specific context of Executive Order 12,968. This bar on judicial review forecloses all of Moyar's claims.

16

2.  Even if the executive order were judicially enforceable, Moyar has failed to state a claim.  As the district court correctly held, Moyar has failed to plausibly allege that he is entitled to the documents and documentation-request paperwork he seeks under the executive order, because neither USAID nor DCSA ever made a final determination to deny or revoke his security clearance.  Because Moyar could not allege that either agency had "determined" that he did "not meet the standards for access to classified information," he could not allege a claim to the documents under the plain language of the executive order.  Both agencies only ever made preliminary assessments of his eligibility to access classified information.  To the extent Moyar received some documents and documentation-request paperwork from the agencies relating to those preliminary assessments, those disclosures were not required under the executive order.

3.  Finally, the district court did not abuse its discretion in denying Moyar's motion to strike a declaration that the government filed in connection with its motion to dismiss.  Moyar does not—and cannot—allege any prejudice from the denial of the motion to strike.  The district court did not rely upon the declaration in granting the

dismissal, consistent with the fact that the district court dismissed Moyar's complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). The district court's decision was also consistent with Federal Rule of Civil Procedure 12(f), which only permits a court to strike a pleading or elements thereof.

## ARGUMENT

## I.    The Executive Order Bars Judicial Review

Dismissal of Moyar's claims was proper because Moyar claims only that he was denied rights that are alleged to flow from Executive Order 12,968. Section 7.2(e) of the executive order states that it "is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Exec. Order No. 12,968, § 7.2(e), 60 Fed. Reg. at 40,254. Rather, the executive order "is intended only to improve the internal management of the executive branch." *Id*. Section 5.2(c) reinforces the point by contemplating that agency heads will "promulgate regulations to implement" section 5.2(a) and by specifying that "[t]his section ...

18

creates no procedural or substantive rights." *Id.* § 5.2(c), 60 Fed. Reg. at 40,252.

As this Court has held, "[a]n Executive Order devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not[] … subject to judicial review." *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993); *accord Helicopter Ass'n Int'l v. Federal Aviation Admin.*, 722 F.3d 430, 439 (D.C. Cir. 2013). This limitation on review cannot be sidestepped by recharacterizing the claim as brought under the APA rather than the executive order itself. In *Air Transport Ass'n of America v. Federal Aviation Administration*, 169 F.3d 1 (D.C. Cir. 1999), this Court considered an executive order that contained language barring judicial review nearly identical to that of section 7.2(e) of Executive Order 12,968. The petitioner there argued that "it d[id] not seek to assert rights under the order but [wa]s merely referencing [the order] to provide evidence of the arbitrary and capricious nature of the [agency's] decision." *Id.* at 8–9. The Court rejected this argument as "nothing more than an indirect—and impermissible—attempt to enforce private rights under the order." *Id.* at 9. Dismissal is warranted for the same

19

reason here. Executive orders regulating the internal management of the executive branch and expressly barring review "serve as presidential directives to agency officials to consider certain policies" and "do not create free-standing private rights to enforce such policies because an executive order is not 'law' within the meaning of the Constitution or the APA." *California v. Environmental Prot. Agency*, 72 F.4th 308, 318 (D.C. Cir. 2023).

The Federal Circuit arrived at the same conclusion in the specific context of Executive Order 12,968, explaining that section 7.2(e) "bars a court from reviewing agency compliance" with the executive order. *Romero v. Department of Def.*, 527 F.3d 1324, 1330 n.1 (Fed. Cir. 2008). The Federal Circuit relied on cases from several circuits arriving at the same conclusion in the context of executive orders with nearly identical language barring review. *Id.* For instance, in *Michigan v. Thomas*, 805 F.2d 176 (6th Cir. 1986), the court of appeals considered an executive order with the same language and held that it conveys a "clear and unequivocal intent that agency compliance with" the executive order "not be subject to judicial review." *Id.* at 187; *accord National Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 (11th Cir. 2021); *Sur*

20

*Contra La Contaminacion v. Environmental Prot. Agency*, 202 F.3d 443, 449–50 (1st Cir. 2000); *Morongo Band of Mission Indians v. Federal Aviation Admin.*, 161 F.3d 569, 575 (9th Cir. 1998).

In short, Moyar's challenges to the agencies' compliance with Executive Order 12,968 are foreclosed by the bar on judicial review in the executive order, no matter whether the claims are brought under the APA, Declaratory Judgment Act, Mandamus Act, or All Writs Act. In the absence of a viable cause of action, dismissal is appropriate. *See Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam) (explaining that when "no cause of action against the [agency] exists for challenges …, the district court properly dismissed [the] complaint for failure to state a claim upon which relief can be granted").[3]

---

[3] A footnote in Moyar's district court brief asserts that if he lacks enforceable rights under the executive order, he should be allowed to amend his complaint to assert claims under agency implementing regulations instead. Dkt. No. 19, at 8 n.5. But a "bare request in an opposition to a motion to dismiss" does not constitute a motion to amend. *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). And in any event, Moyar's primary argument on appeal is that the "Executive Order applies to the entire Executive Branch" (unlike an agency-specific regulation) and therefore supplies an enforceable mandate that applies across agencies. Br. 12. Yet the executive order does not create any judicially enforceable rights. And to the extent Moyar's primary challenge on appeal is that one agency failed to supply

*Continued on next page.*

## II. Even If Executive Order 12,968 Were Judicially Enforceable, Plaintiff Has Failed To State A Claim

Even if the executive order did not expressly bar judicial review, dismissal is proper because Moyar has failed to plausibly allege entitlement to the documents he seeks under the executive order. As the district court explained, neither USAID nor DCSA "'determined'" that Moyar did "'not meet the standards for access to classified information'" under the executive order, which is a "necessary predicate for his claim to the documents." JA 134 (quoting Exec. Order No. 12,968, § 5.2(a)(2), 60 Fed. Reg. at 40,252).

A. All three of Moyar's counts turn on his allegation that USAID and DCSA's actions were contrary to law because they were inconsistent with section 5.2(a)(2) of the executive order. Even assuming that compliance with the executive order is judicially reviewable, and that USAID and DCSA's decisions not to give Moyar additional documents or documentation-request paperwork under the executive order are final agency actions under the APA, Moyar has not

---

documents held by another agency, Br. 12–13, he provides no authority for the notion that he could have amended his complaint to state a viable cause of action for such a challenge.

plausibly alleged that he is entitled to relief under section 5.2(a)(2).

Section 5.2(a)(2) provides that "[a]pplicants and employees who are

determined to not meet the standards for access to classified

information" shall be provided documents "upon which a denial or

revocation is based," but only "to the extent the documents would be

provided if requested under the Freedom of Information Act (5 U.S.C.

552) or the Privacy Act ([5] U.S.C. 552a)."  Exec. Order No. 12,968,

§ 5.2(a)(2), 60 Fed. Reg. at 40,252.  In other words, the executive order

makes clear that a determination is a final denial or revocation of

access to classified information.

Neither USAID nor DCSA ever made a final determination to

deny or revoke Moyar's access to classified information within the

meaning of section 5.2(a)(2) of the executive order.  USAID only

suspended Moyar's access to classified information and informed Moyar

that the agency would "initiate a background investigation" and the

resulting information would "be adjudicated … to determine the

pertinent facts … and to assess [Moyar's] continued eligibility to hold a

security clearance."  JA 25.  Moyar concedes that "USAID never made a

final agency decision to grant or deny him a clearance which would be

23

considered independently sufficient to trigger his rights under Section 5.2(a) of the Executive Order."  Br. 12.

DCSA also only made preliminary assessments that Moyar should not be granted a clearance.  In its December 2020 and January 2021 letters to Moyar, DCSA explained that it had made only a "preliminary decision" to revoke Moyar's clearance, explaining that only "[i]f this preliminary decision becomes final" will Moyar lose his eligibility to access classified information.  JA 31.  Before the preliminary decision could "become a final security determination," JA 32, Moyar's political appointment ended, JA 11.  Then, in December 2021, following a separate security clearance request, DCSA made a "preliminary determination" to deny the request.  JA 80.  DCSA informed Moyar that he was free to decide whether to respond to the Statement of Reasons and only afterward would the agency decide whether his existing clearances would be revoked and his pending clearance requests denied. JA 79–80.  The language in DCSA's letters left no room for doubt that the agency had made only preliminary assessments and that final determinations on revocation and denial remained pending.  And as Moyar effectively concedes in his opening brief on appeal, a "final

24

agency decision" to revoke or deny a clearance was required to "trigger his rights under Section 5.2(a) of the Executive Order." Br. 12.

It does not matter whether the documents sought from USAID pursuant to section 5.2(a)(2) were documents related to USAID's suspension of Moyar's access to classified information or documents USAID allegedly provided DCSA in DCSA's preliminary review of Moyar's clearance eligibility. Br. 12. Neither USAID nor DCSA "determined" that Moyar did "not meet the standards for access to classified information" in a final decision to deny or revoke his clearance, so no obligations to provide documents under section 5.2(a)(2) were triggered in either event.

For the same reasons, the district court properly dismissed Moyar's claims that he was entitled to additional documentation-request paperwork from either DCSA or USAID that would allow him to query other Department of Defense components for documents relied upon in DCSA's preliminary assessments. JA 138. Executive Order 12,986 does not create any judicially enforceable rights—whether a right to request documents underlying an agency's preliminary assessment of clearance eligibility, or a right to receive forms for

25

requesting such documents.  And given that Moyar has failed to allege

that he is entitled to documents "upon which a denial or revocation is

based," he has also failed to allege that he is entitled to forms to request

such documents.  In any event, DCSA informed Moyar that it had not

relied on documents from those other Department of Defense

components in its preliminary assessments, so it is not clear that Moyar

would be entitled to any records from those components even if DCSA

had rendered a final denial or revocation decision on his clearance.

JA 12, 128, 132.  Thus, the district court correctly concluded that Moyar

has not plausibly alleged that the government acted contrary to law in

declining to provide him with documentation-request forms.  Notably,

Moyar does not directly challenge this aspect of the district court's

decision in his opening brief on appeal.[4]

**B.**  Moyar is incorrect that neither side argued in district court

that the agencies had not "determined" that Moyar did "not meet the

standards for access to classified information."  Br. 7–9.  The

---

[4] Moyar also does not challenge the merits of any agency action
related to his security clearance.  Nor could he.  *See Department of Navy
v. Egan*, 484 U.S. 518, 520, 528–34 (1988) (explaining that the
"substance of an underlying decision to deny or revoke a security
clearance" is not reviewable).

government explained in district court that dismissal was warranted because neither USAID nor DCSA had determined Moyar's eligibility for access to classified information within the meaning of section 5.2(a)(2)—that is, that neither agency made a final decision to deny or revoke his security clearance.  *See* Dkt. No. 7-1, at 18 (emphasizing that Moyar was sent "a 'preliminary determination'—not a final one").  While the government framed this argument in terms of whether there had been final agency action, the bottom-line point was the same— there was no "determin[ation]" under section 5.2(a)(2) of the executive order.

**C.**  Moyar cites assorted agency guidance to assert that DCSA's "preliminary decision" was a "determin[ation]" under the executive order.  Br. 10.  But none of these sources say that an agency's preliminary assessment of an individual's eligibility for a security clearance—which does not result in the denial or revocation of a clearance—is a final "determin[ation]" under *the executive order*.  The executive order describes only a minimum level of procedure that agencies are to provide and explains that agencies "may provide additional review proceedings beyond those required by" the executive

order.  Executive Order 12,968, § 5.2(c), 60 Fed. Reg. at 40,252.

Agencies are free to adopt their own procedures implementing the

executive order and to permit individuals to request documents at

earlier stages.  In fact, Moyar acknowledges in his complaint that he

was promptly given the DCSA documents on which DCSA relied in its

December 2021 Statement of Reasons.  JA 12.  That does not alter the

meaning or scope of the executive order, however.

  For similar reasons, Moyar errs in insisting that a proceeding

before an Administrative Judge—which is not even expressly

contemplated by the executive order—is the relevant appeal triggering

any right to documents under the executive order.  *See* Br. 10.  The

appeal contemplated by the executive order is an appeal of the agency's

denial or revocation decision "to a high level panel, appointed by the

agency head, which shall be comprised of at least three members, two of

whom shall be selected from outside the security field."  Exec. Order No.

12,968, § 5.2(a)(6), 60 Fed. Reg. at 40,252.  As the district court

explained, DCSA's preliminary decision would be "submitted to an

Administrative Judge for a determination as to whether or not to grant,

deny, or revoke [his] security clearance," which would be the "final

determination." JA 138 (alteration in original) (quoting JA 79, 81). But DCSA's process had not yet reached this point, and no final denial or revocation decision had been rendered. The district court was correct in applying the plain meaning of "determination" in construing the meaning of that term in the executive order and in concluding that a hearing before an Administrative Judge is not the relevant post-determination "appeal."

## III. The District Court Did Not Abuse Its Discretion In Denying Plaintiff's Motion To Strike

Moyar also challenges the district court's decision not to strike a declaration that the government filed in connection with its motion to dismiss. Br. 13–15. The district court's decision not to strike the declaration was not an abuse of discretion, however, and Moyar's arguments provide no basis for disturbing the judgment below. *See Hall & Assocs. v. Environmental Prot. Agency*, 956 F.3d 621, 629 (D.C. Cir. 2020) (explaining that a district court's ruling on a motion to strike is reviewed for abuse of discretion).

As an initial matter, Moyar alleges no prejudice from the denial of the motion to strike. Nor could he. The district court did not cite or rely on the declaration in granting dismissal. This is unsurprising

29

because, although the government moved to dismiss under both Federal

Rule of Civil Procedure 12(b)(1) and 12(b)(6), and properly submitted

the declaration in support of its motion under Rule 12(b)(1), the district

court granted dismissal only under Rule 12(b)(6).  As a general matter,

while the district court may consider materials outside the pleadings in

deciding whether to grant a motion to dismiss for lack of jurisdiction

under Federal Rule of Civil Procedure 12(b)(1), *see Jerome Stevens*

*Pharm., Inc. v. Federal Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir.

2005), the district court may only consider the facts alleged in the

complaint, documents attached as exhibits or incorporated by reference

in the complaint, and matters about which the Court may take judicial

notice in deciding whether to grant a motion to dismiss for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6), *see Equal*

*Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117

F.3d 621, 624–25 (D.C. Cir. 1997).  Here, the district court concluded

that it had jurisdiction and dismissed the complaint for failure to state

30

a claim under Rule 12(b)(6), relying only on the complaint and documents incorporated by reference in the complaint.[5]

In any case, the district court did not abuse its discretion.  JA 4. As the district court explained, Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a)," and "motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2004).  A motion to strike "is neither an authorized nor a proper way … to strike an opponent's affidavits."  *Id.*  And even when Rule 12(f) motions are proper, "motions under Rule 12(f) are viewed with disfavor

---

[5] Consistent with the district court's dismissal on Rule 12(b)(6) grounds, this brief cites only documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice.  *See Equal Emp't Opportunity Comm'n*, 117 F.3d at 624–25; 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.30[4] (3d ed. 1998) (when "a document is referred to in the complaint and is central to the plaintiff's claim …, the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment").

by the federal courts and are infrequently granted." *Id.* The district court's decision not to strike the affidavit was therefore correct under the rule. And even assuming the district court had possessed the discretion to entertain a motion to strike a declaration, the district court's decision not to grant the motion to strike did not prejudice Moyar, since the district court did not rely on the declaration in its dismissal ruling.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOSHUA M. SALZMAN

*s/ Urja Mittal*
URJA MITTAL
*Attorneys, Appellate Staff*
*Civil Division, Room 7248*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-4895*
*urja.mittal@usdoj.gov*

December 2023

33

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,171 words.  This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.


*s/ Urja Mittal*
URJA MITTAL