No. 23-5085

[ORAL ARGUMENT 8 MARCH 2024]

# UNITED STATES COURT OF APPEALS
# DISTRICT OF COLUMBIA CIRCUIT

_____

MARK MOYAR,

*Plaintiff-Appellant*,

v.

DEPARTMENT OF DEFENSE, *et al.*,

*Defendant-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
No. 1:22-cv-00478 (Timothy J. Kelly, J.)

_____

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

_____

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD  20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................i

GLOSSARY ........................................................................................................... ii

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT ..........................................................................................................2

       I.     CLARIFICATION OF THE RECORD........................................2

       II.    JUDICIAL REVIEW IS PROPER..............................................7

       III.   DCSA MADE A FINAL DETERMINATION ...........................9

       IV.   THE DISTRICT COURT'S DENIAL OF THE MOTION TO STRIKE WAS PREJUDICIAL......................................................13

CONCLUSION .....................................................................................................14

CERTIFICATE OF SERVICE..............................................................................15

CERTIFICATE OF COMPLIANCE ...................................................................16

# TABLE OF AUTHORITIES

**Cases:** **Pages**

*Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996)..................................................................................................8

**Statutes and Rules:**

DOD Directive 5220.6 .................................................................……......10

*DOD Manual 5200.02..................................................................……....4, 10

*Intelligence Community Policy Guidance No. 704.3 ...................................11, 12

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| DCSA | Defense Counterintelligence and Security Agency |
| DOD | Appellee Department of Defense |
| JA | Joint Appendix |
| Moyar | Appellant Mark Moyar |
| SCI | Sensitive Compartmented Information |
| TS/SCI | TOP SECRET security clearance with SCI access |
| USAID | Appellee United States Agency for International Development |

# SUMMARY OF ARGUMENT

The District Court erred when it declined to strike the Jones Declaration, and it erred when it held that Appellee Department of Defense ("DOD") had not triggered Appellant Mark Moyar's ("Moyar") right to receive the investigative material relied upon by the Defense Counterintelligence and Security Agency ("DCSA"). As far as Appellee United States Agency for International Development ("USAID") was concerned, the District Court erred by focusing on USAID's decision to suspend Moyar's clearance in June 2019 instead of USAID's refusal to provide information relied upon by DCSA to revoke his clearance in December 2021.

When given a chance to refute these arguments, Appellees instead attempted to renew an argument which is not before the Court before making a full-throated defense of an argument they never raised before the District Court, and which is directly foreclosed by DOD's own regulations and practices. To the extent that Appellees do offer arguments in the proper context, they have failed to refute any of Moyar's points, and this leaves this Court with the only logical choice: holding that the District Court erred and remanding the case to the District Court for proper adjudication on the merits, with or without specific instructions.

## ARGUMENT

I.   **CLARIFICATION OF THE RECORD**

This case is about a person who has been denied one of the key aspects of due process in an attempt to drive him out of public service based on unsupported allegations of misconduct without ever providing him the opportunity to meaningfully challenge the allegations made against him. In a transparent attempt to distract from this basic fact and prejudice the Court, Appellees instead concoct an alternative narrative of a clever national security risk who has deliberately attempted to avoid consequences for mishandling classified information. Unfortunately for Appellees' case, their narrative is belied by the record. Therefore, before Moyar can address the various legal infirmities in Appellees' brief, he must first correct many of their *factual* contentions.

First, Appellees spend the very first paragraph of their Statement of the Issues section lamenting the "multiple occasions government agencies began investigations into whether Moyar's eligibility for a clearance should be revoked or denied on indications that Moyar had improperly handled classified information." (Br. for Appellees, Dkt. #2029892, at 1 (filed Dec. 4, 2023) [hereinafter Gov't Br.].) Appellees blame the alleged fact that "none of these investigations was completed" on "Moyar repeatedly transferr[ing] positions between agencies and in and out of government service" (*id.*), as if he were trying to avoid the

consequences of his misdeeds. However, there are numerous issues with this characterization. First, the fact that both USAID and DOD suspended, revoked, or denied his clearance no fewer than *three times* based on the same allegations of mishandling classified information clearly demonstrates how frequently the "investigations w[ere] completed." Second, to the extent that Appellees are attempting to argue that none of the *final determinations* (as defined by DOD as taking place after an Administrative Judge's opinion) was completed,[1] that was due entirely to the fact that each of Moyar's first two attempts to conclude the proceedings *were cancelled unilaterally by Appellees*. J. App'x at 10-11 [hereinafter JA]. Moyar has attempted to conclude this matter every step of the way, short of engaging in a final appeal without any of the alleged evidence being held against him, and Appellees cannot now be heard to complain that he is responsible for them never giving him that chance.

It is important at this point to clarify the nature of the security clearances in question, because that will inform the Court's understanding of the relevant legal authorities. At USAID, Moyar held a TOP SECRET security clearance. JA at 25. He did not have access to Sensitive Compartmented Information ("SCI").[2] When

---

[1] Whether or not a final determination was ever made is the core of this dispute, and Moyar does not intend to convey his acceptance of Appellees' definition.

[2] SCI is an access control used to further limit access to certain sensitive information beyond its classification, but it is not technically a clearance.

3

Moyar was sponsored by the private contractor Occam's Razor, he was given a TOP SECRET clearance *with* SCI access (colloquially known as a "TS/SCI clearance"). DOD accordingly revoked Moyar's TS/SCI clearance in December 2020 and January 2021. *Id.* at 31, 56. When Occam's Razor again sponsored Moyar for "another security clearance" in February 2021 (Gov't Br. at 10), it was sponsoring him for the same TS/SCI clearance that he had previously held (so that he could continue doing the work that he was doing when he left the company to take his Presidential appointment in December 2020). For unknown reasons, however, DOD's most recent denial letter does not indicate the level of the security clearance in question—or even that it *was* a security clearance. *See* JA at 79 (referring only to "eligibility for a security clearance /position [sic] of public trust").[3] This does not change the fact that Occam's Razor had sponsored him for a TS/SCI clearance. This is relevant because the appeal process for TS/SCI clearances is established in Intelligence Community Policy Guidance ("ICPG") 704.3 as well as DOD regulations. *See DoD Manual 5200.02: Procedures for the DoD Personnel Security Program* § 10.1(b) (Oct. 29, 2020) [hereinafter DODM 5200.02], *available at*

---

[3] This is atypical for DCSA clearance denial letters and Moyar has no explanation for the discrepancy.

4

https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/520002m.pdf

(last accessed Jan. 30, 2024).

Appellees next attempt to persuade the Court that not only is Moyar guilty of publicly disseminating classified information, but that he *admits it*. To be clear, Moyar has *never* conceded that he improperly included any classified information in his book, and any citation to his complaint (styled as "JA 10") purporting to indicate as such is entirely false. In fact, Moyar has yet to even learn what classified information he is accused of publishing or what review allegedly identified it. JA at 13. That is some of the very information he is trying to obtain so that he can refute it in his appeal.

Similarly, Appellees stress "Moyar's *revelation* that he had 'turned over [his] personal computer containing defense information in the form of a book manuscript to [his] son for 'scrubbing' of sensitive information along with data on another personal computer possibly containing related manuscript files' and that Moyar 'may have or made a copy of the original draft and possibly some related files on [his] current personal computer." (Gov't Br. at 8-9 (emphasis added) (quoting JA 35-36).) This too is an unsupported allegation that Moyar denies, and it is telling that Appellees quote from the Statement of Reasons which purports to summarize another interview, the records of which *have not been released to*

5

*Moyar*.[4] When DOD argues that DCSA acted properly by "provid[ing] the documents that it had created but not documents created by USAID or other Department of Defense components" (*id.* at 11), it must be understood that this is the reality it is describing. Put simply, Appellees maintain that a person denied a security clearance is only entitled to reports written by DCSA purporting to summarize other documents and evidence, and that *none of the original evidence* must be provided because it was not "created by DCSA." According to Appellees, this is because DCSA only "relied on" its own documents purporting to summarize that other evidence. (*Id.* at 12.)

Next, in an attempt to insinuate that Moyar has not actually been harmed by Appellees' refusal to provide him with the records to which he is entitled, Appellees state simply that "Moyar submitted document requests under the Freedom of Information Act and the Privacy Act to USAID, DCSA, Special Operations Command, the Defense Office of Prepublication and Security Review, and the Defense Insider Threat Management and Analysis Center *and received responses*. (*Id.* (emphasis added).) Appellees carefully admit that those "responses" consisted of virtually no relevant information, when the agencies even

---

[4] Moreover, in making this contention, Appellees have revealed their prejudicial motive: the prominently quoted allegations were from an earlier Statement of Reasons *and were later recanted*. *See* JA at 81-82 (omitting any allegations of comparable conduct or anything related to Guideline K).

6

deigned to process the requests. (Br. for Pl.-Appellant, Dkt. #2017916, at 4 and n.4 (filed Sept. 20, 2023).)

Appellees then briefly suggest that Moyar only seeks relief under the Administrative Procedure Act ("APA") (Gov't Br. at 12) before then tacitly admitting in passing that he also sought mandamus relief on the next three pages (*id.* at 13-15). Appellees' final attempt to reframe the case falls at the end of the Statement of the Case, when they state simply that "[t]he District Court dismissed all of Moyar's claims with prejudice 'because new factual allegations cannot cure the deficiencies in his complaint.'" (*Id.* at 15 (quoting JA at 139).) This, however, omits a critical portion of the District Court's opinion, in which it rejects Moyar's request for a dismissal without prejudice so that he could file an amended complaint which cites to DOD regulations, because the District Court concluded that "he has identified no regulations that would save his claim, nor is it clear how they could do so." JA at 139. While Appellees briefly mention Moyar's *request* later in their brief, they dismiss it as a "bare request in an opposition to a motion to dismiss [which] does not constitute a motion to amend" while critically omitting the fact that the District Court *ruled on it*, treating it like a motion to amend.

Having addressed the most glaring misrepresentations or misdirections in Appellees' brief, Moyar will spend the remainder of this Reply briefly addressing the most problematic issues with Appellees' arguments, none of which effectively

7

refute any of Moyar's contentions, in roughly the order in which they are presented in Appellees' brief.[5]

## II. JUDICIAL REVIEW IS PROPER

As an initial matter, the Court should not entertain Appellees' argument that Executive Order 12,968 bars judicial review because it is not properly before the Court on appeal. However, in a brief response to Appellees' position, Moyar will simply indicate that even if the Court were to consider this argument, the fact that he sought mandamus relief would, by itself, doom the argument. "To be sure, if Congress precluded [mandamus] judicial review, . . . that would be another matter. But we have never held that a lack of a statutory cause of action is *per se* a bar to judicial review." *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1338 (D.C. Cir. 1996) (collecting cases). If a lack of a statutory cause of action is not fatal to a mandamus case, then a lack of a cause of action in an Executive Order is *definitely* not fatal to it.

Regarding the more nuanced question of whether an APA case can be brought against an agency for violating an Executive Order, that is a question that

---

[5] Moyar's decision to follow the course of Appellees' brief should not be interpreted as a concession that Appellees have properly framed the issues; it is solely to assist the Court in matching Appellees' arguments with Moyar's counterarguments. Similarly, Moyar has elected not to repeat himself unnecessarily, so if he does not address an argument raised by Appellees herein, that is simply an indication that he stands behind the corresponding argument in his Brief.

the Court does not need to answer, because it should instead hold that the District Court should have allowed Moyar to amend his complaint to include a citation to specific agency regulations instead of dismissing the case with prejudice. Moyar will therefore not belabor the question of APA reviewability further.

### III. DCSA MADE A FINAL DETERMINATION

As noted above, the core issue before the Court is whether the December 2021 determination to deny Moyar's request for a TS/SCI clearance constitutes a "final determination" sufficient to trigger the agency's duty to provide the requested information to Moyar upon request. Despite not arguing this point in the case below—a fact that Appellees do not meaningfully contest (Gov't Br. at 27)—Appellees now take the position that DCSA's limited fulfillment of his request "w[as] not required under the executive order" (*id.* at 17) and that no person denied a security clearance by DCSA has a right to receive any records about the denial until after he has already appeared personally to argue his case before an Administrative Judge (*id.* at 28-29). Not only is this a nonsensical interpretation of the Executive Order, it is directly contrary to *the actual governing regulations*.

As noted by both DCSA and the District Court, the primarily governing DOD regulation is DOD Directive 5220.6. JA at 79, 138. That directive, despite being amended in 1999, only purports to follow Executive Order 10,865 and makes no mention of either Executive Order 12,968 (issued in 1995) or *any* right to

9

request information *at any time*. *See generally Department of Defense Directive 5220.6: Defense Industrial Personnel Security Clearance Review Program* (Jan. 2, 1992), *available at*

https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/522006p.pdf

(last accessed Jan. 30, 2024). The copy of Executive Order 10,865, as amended, that this directive cites as authority similarly does not count Executive Order 12,968 as one of the relevant amendments. *Id.* at 10. It is therefore of limited utility to this discussion.

That regulation, however, does reference and incorporate "standards in DoD 5200.2-R." *Id.* § 6.1. DoD 5200.2-R has been superseded by DODM 5200.02, cited above, which provides a clear indication of the position DOD *actually* takes on this proposition. In addition to stating that SCI determinations are governed by ICPG 704.3—which will be addressed below—this Manual all but explicitly refutes the arguments that DOD makes now. It first states that the "Minimum Due Process Requirements Applicable to All" include "Informing the individual of their right to: . . . Request the documents, records, and reports upon which the unfavorable national security determination was made." DODM 5200.02 § 10.2(b). This is provided after "the unfavorable determination," which is described as "[t]he LOD or LOR." *Id.* § 10.2(a). LOD and LOR are further defined as "a letter of denial (LOD) or letter of revocation) . . . issued by [DCSA]." *Id.* § 7B.3(d)(5) (emphasis

10

added). Critically, this definition is explicitly contrasted with "a tentative denial or revocation." *Id.*

The Manual further explains the chronology of the appeal process, and how it is exactly how Moyar explains it, with the request for review by an Administrative Judge being considered "the appeal." "The individual must acknowledge the receipt of the LOD or LOR and indicate in writing if they will submit an *appeal*." *Id.* § 10.2(e) (emphasis added). This "appeal" must "provid[e] the individual an opportunity to appear in person and present relevant witnesses, documents, materials, and information." *Id.* § 10.2(f). This is exactly what DCSA was directing Moyar to do: "State whether or not you wish to have a hearing before an Administrative Judge, or if you wish to have the Administrative Judge issue a decision based upon the administrative record, without a hearing." JA at 79.

Furthermore, ICPG 704.3, which is explicitly referenced as the source of authority for SCI appeals, explicitly states that "[a]ny documents, records and reports upon which a denial or revocation is based [must] be provided within thirty (30) days of request." *ICPG 704.3: Denial or Revocation of Access to Sensitive Compartmented Information, other Controlled Access Program Information, and Appeals Processes* § D(1)(c) (Oct. 2, 2008), *available at* https://www.dni.gov/files/documents/ICPG/ICPG-704-3.pdf (last accessed Jan. 30, 2024). This must happen *before* the person is given "[a]n opportunity to respond . .

11

. to request a review of the determination," *id.* § D(1)(d), and it is the "[w]ritten notice of and reasons for the results of the review" which are subject to "the right to appeal." *Id.* § D(1)(e). Therefore, regardless of the particular language used by DCSA in a piece of correspondence, it is manifestly apparent that both DOD and the Director of National Intelligence hold the *official* position that the right to request and receive this information comes *before* the hearing before an Administrative Judge.

      Moyar discusses these rules for two separate reasons. First, it indicates that an amended complaint would not be futile. However, that is not the primary reason for this discussion. More importantly, these citations demonstrate that the position being currently taken by Appellees is not and has not ever been the Government's actual interpretation of Executive Order 12,968. Critically, this interpretation is shared across the Intelligence Community; the Central Intelligence Agency even provides people denied clearances the standard instructions that "[y]ou may obtain your investigative file even if you do not want the security decision reviewed."[6] It is therefore contrary to both justice and good public policy to entertain an interpretation of the meaning of an executive order which is irreconcilable with the

---

[6] This document is a standard set of appeal instructions included with all denial or revocation letters. It is not in the record, and Moyar only includes a mention here to further illustrate the type of evidence that he would have been able to introduce if given the chance by the District Court to brief this issue.

12

actual policies of the agency making the argument, at least without providing the plaintiff a full opportunity to brief the issue and provide evidence to refute it. In short, if the Court is not inclined to reject Appellees' reading of the Executive Order outright, it should at least remand the case to the District Court to receive arguments and evidence from the parties, but if it is convinced that Appellees' reading is unsupported, it should issue a definitive holding on that issue and reverse the District Court's judgment with instructions to issue a decision consistent with this Court's holding.

## IV.   THE DISTRICT COURT'S DENIAL OF THE MOTION TO STRIKE WAS PREJUDICIAL

Moyar has fully articulated his arguments regarding his motion to strike the Jones Declaration, and he will not repeat them unnecessarily here. The only point on which he will provide additional argument is with respect to Appellees' argument that he suffered no harm from the denial because "[t]he district court did not cite or rely on the declaration in granting dismissal." (Gov't Br. at 29.) Moyar fully admits that if the Court rules against him regarding the District Court's substantive decision, then this issue is effectively moot. However, if the Court reverses and remands any part of the case, then the harm is still present, since the District Court will be free to cite or rely on the declaration in any future decision. Therefore, in that instance, Appellees' argument lacks any merit, and the Court should reverse the District Court's denial of Moyar's motion to strike.

13

## CONCLUSION

For the foregoing reasons and those set forth in Moyar's Brief, the Court should reverse the District Court's orders and remand the case with instructions to issue a decision consistent with its holdings.

Date: January 30, 2024

                                          Respectfully submitted,

                                          /s/ Kelly B. McClanahan  
                                          Kelly B. McClanahan, Esq.  
                                          D.C. Bar #984704  
                                          National Security Counselors  
                                          4702 Levada Terrace  
                                          Rockville, MD 20853  
                                          301-728-5908  
                                          240-681-2189 fax  
                                          Kel@NationalSecurityLaw.org

                                          *Counsel for Appellant*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of January, 2024, I filed the foregoing with the Court's Electronic Case Filing system, causing a copy to be served via electronic mail to Appellees' counsel of record.

Date: January 30, 2024

                 Respectfully submitted,

                  /s/ Kelly B. McClanahan
                 Kelly B. McClanahan, Esq.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing filing contains 3,257 words and was prepared in 14-point Times New Roman font using Microsoft Word 2016.

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
